EDWARD BROWN ET AL. V. N. S. BROWN ET AL.

FILED FEBRUARY 17, 1904. No. 13,316.

1. Wills: CHILD OMITTED: EVIDENCE: BURDEN OF PROOF. Section 149, chapter 23, Compiled Statutes, provides: "When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake or accident, such child or the issue of such child shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section." *Held* (1) That parol evidence is admissible to show whether such omission was intentional; (2) That the burden of proof is on the pretermitted child or grandchild to show that the omission was unintentional.

2. Trial: NEW PARTIES. Section 50a of the code, which provides for intervention before trial, does not curtail the power of a court to bring other parties before it, when satisfied that their presence is necessary to a proper determination of the cause.

3. Harmless Error: An erroneous ruling overruling a demurrer is error without prejudice, where the pleading assailed is afterwards amended, and the cause submitted and determined on the amended pleading.

4. Trial: AMENDMENT. When necessary to a proper determination of the cause, it is not error to permit an amendment to a pleading after trial, and reopen the case for a trial of the issues tendered by such amendment.

5. Findings: EVIDENCE. Evidence examined, and *held* insufficient to sustain the findings of the trial court.

ERROR to the district court for Hamilton county: SAMUEL H. SORNBORGER, JUDGE. *Reversed.*

*Hainer & Smith,* for plaintiffs in error.

*J. H. Edmondson, M. F. Stanley* and *O. A. Abbott,* contra.

ALBERT, C.

On the 18th day of February, 1901, an instrument pur-
porting to be the last will and testament of Henry S.
Brown, deceased, was admitted to probate in the county
court of Hamilton county. The testator was the father
of 13 children, ten of whom survived him. Three of his
sons, George A., Hamilton J. and Albert H., died before
the execution of the will. The first left four children,
namely, Carrie, Nellie, Ethel and George; the second left
three, Jennie, Ettie and Charles; the third left two,
George and Mabel. The will, after making provision for
the payment of the debts of the testator and for the sup-
port of the surviving widow, contains the following pro-
visions:

"I give and bequeath one hundred dollars ($100) each
to the following, my grandchildren, to wit, Carrie Brown,
Nellie Brown, Ethel Brown and George Brown, and be-
ing children of my deceased son, George W. Brown; and
to Jennie Brown and Ettie Brown, being children of my
deceased son, Hamilton J. Brown; and being in the ag-
gregate to my said six grandchildren the sum of six hun-
dred dollars ($600). * * * After the payment of all
my just debts, and the payment of said legacies to my said
wife and grandchildren, and the setting off to my said
wife of said real estate hereinbefore specifically men-
tioned, I give, bequeath and devise all the rest, residue and
remainder of my estate, both real and personal, of what-
soever it may consist and wheresoever situated, to such
of the children of my own body begotten as shall survive
me. Such surviving children to share the said residue of
my estate share and share alike."

After the final report of the administrator with the will
annexed had been filed, and before a hearing thereon,
George and Mabel Brown, children of the deceased son,
Albert H. Brown, by their next friend, filed a petition in
the county court alleging, among other things, that
"neither they nor their deceased father were mentioned

by name in said will," but, "that they were included in the general designation of 'children of my own body begotten.'" The prayer is as follows:

"Wherefore your petitioners pray that the court construe and declare the true meaning and intent of said testator, and that your petitioners may be adjudged and decreed to be included under the words 'children of my own body begotten' and entitled to an undivided one-eleventh (1-11) part of the estate of said Henry S. Brown, deceased, as residuary devisees, subject to the other provisions in said will contained, and, in the event the court should determine that your petitioners were not included, or intended to be included, under the words, 'children of my own body begotten,' that they may be adjudged and decreed to be entitled to an undivided one-thirteenth (1-13) part of the entire estate of the said Henry S. Brown, deceased, subject only to the dower and homestead rights of the widow of the testator, Angelina Brown."

The court found against the petitioners, and dismissed their petition; an appeal was taken to the district court. In the meantime, on the 8th day of January, 1902, five children of the testator commenced a suit in the district court against the other five for a partition of the real estate of which the testator died seized, which proceeded to a final decree confirming the respective shares of the parties to that suit to such real estate. There were other parties to the suit, but it is unnecessary to mention them. A sale had been ordered, and notice thereof published. On March 22, 1902, and about two hours before the time fixed for the partition sale, George and Mabel Brown, children of the deceased son, Albert H. Brown, and petitioners in the proceeding brought in the county court for a construction of the will, filed a petition of intervention in the partition suit, which, save in some minor details not necessary to notice at this time, was substantially the same as that filed by them in the proceeding for a construction of the will. The plaintiffs and defendants

in the partition suit joined in a motion to strike the peti-
tion of intervention from the files, for the reason that the
application for intervention was too late, which motion
was overruled. The plaintiffs and defendants then joined
in a demurrer to the petition of intervention, which was
also overruled. The plaintiffs and defendants then filed
an answer to the petition of intervention, in which, after
making a general denial, they set out the proceedings had
for the probate of the will, insisting that, as no proceed-
ings had been had or instituted to reverse, vacate or
modify the decree admitting the will to probate, the ques-
tions raised by the petition of intervention were *res judi-
cata.* The interveners filed a reply which amounts to a
general denial. In the meantime the referees had made
a sale of the lands, and on the 8th day of May, 1902, on
the motion of all the parties, including the interveners,
the sale was confirmed, and the referees were ordered to
distribute the proceeds, except the sum of $2,000, which
they were directed to hold to await the final decision of
the court on the matters in litigation between the inter-
veners and the other parties to the suit. Afterwards four
of the plaintiffs, children of the testator, in open court
withdrew all opposition to a decree in favor of the in-
terveners, and asked the court to direct the payment to
the interveners, out of the amount retained in the hands
of the referees, of such portion thereof as should be de-
ducted proportionately from the shares of the plaintiffs
joining in such request, and the court entered an order
in accordance with their request. Afterwards the appeal
from the county court in the proceeding to construe the
will and the suit between the interveners and the other
parties to the partition suit having been consolidated, the
issues in both were tried on the same evidence. The court
held against the interveners on their contention as to the
construction of the will, but held further that they had
been unintentionally omitted from the will by accident or
mistake, and were therefore entitled to a share of the
estate by virtue of the provisions of section 149, chapter

23, Compiled Statutes (Annotated Statutes, 5014), relating to the omission of children or the issue of any deceased child from a will. Thereupon the interveners, over the objections of their opponents, were given leave to amend their petition of intervention in such a way as to make the allegation, "neither they nor their deceased father were mentioned by name in said will," read, "neither they nor their deceased father were mentioned by name in said will, but these petitioners were omitted therefrom by mistake or accident, unless they were included in the general designation of 'children of my own body begotten.'" It is unnecessary to go into details as to what followed the amendment. Eventually the parties were permitted to introduce evidence on the issues tendered by such amendment, and the court found in favor of the interveners, and entered a decree directing that the proportionate share should be paid from the proceeds of the sale retained by the referees. The defendants bring the record here for review on error.

An examination of section 149, supra, will dispose of some of the questions raised in this case; it is as follows:

"When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake or accident, such child or the issue of such child shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section."

One question arising under this section is, whether parol evidence is admissible to show whether the omission was intentional? The decisions of other courts, based on statutes of a similar character, are in conflict. *Wilson v. Fosket,* 6 Met. (Mass.) 400, is a leading case in the affirmative. This case is reported and annotated in 39 Am. Dec. 736. To the same effect are the following: *Lorieux v. Keller,* 5 Ia. 196; *Stebbins v. Stebbins,* 94 Mich. 304, 54 N. W. 159; *Moon v. Estate of Evans,* 69 Wis. 667, 35 N. W. 20. In the last case, the doctrine appears to

have been applied without question. Such evidence is held inadmissible in the following cases: *Estate of Gurraud,* 35 Cal. 336; *In re Estate of Stevens,* 83 Cal. 322, 17 Am. St. Rep. 252; *Bradley v. Bradley,* 24 Mo. 311; *Pounds v. Dale,* 48 Mo. 270; *Chace v. Chace,* 6 R. I. 407. It is not easy to reconcile the doctrine of either line of authorities with the rule which requires the courts to give effect to the intentions of the testator because, in either case, a finding that the omission of a child or grandchild from the will was unintentional, is equivalent to a finding that the will does not reflect the intentions of the testator. When such fact is once established, what his intentions actually were becomes a matter of conjecture, because, had he made provision in the will for the pretermitted child, such provision of necessity would have resulted in a modification of the provisions made for the objects of his bounty Just how he would have modified the other bequests or devises to make provision for such child can rarely, if ever, be ascertained with certainty. However that may be, we are disposed to follow the cases holding that parol evidence is admissible to show whether the omission was intentional. In addition to the reasons given in cases supporting that doctrine, we find an additional reason in the language of our section 149, and the section immediately preceding it. Section 148 provides:

"When any child shall be born after the making of his parent's will, and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, * * * *unless it shall be apparent from the will* that it was the intention of the testator that no provision should be made for such child."

The foregoing provision shows that the lawmakers worded the section under consideration advisedly, and with a view to express their meaning fully and clearly. If they saw the importance of limiting the evidence of the intentions of the testator in regard to posthumous children to the will itself, it is not at all likely that in the next section they would have left it a matter of specula-

tion, whether such proof should be limited to the instrument itself, or might be supplied by parol. We are satisfied that whether the omission was intentional or unintentional is a question of fact, which may be established by parol testimony.

Another question which has arisen under statutes similar to ours is, whether the burden of proof is upon the pretermitted child or grandchild to show that he was unintentionally omitted from the will, or whether it is upon those claiming that his omission was intentional. The Massachusetts statute, for present purposes, may be said to be substantially the same as our section 149, save that, instead of the clause, "and it shall appear that such omission was not intentional, but was made by mistake or accident," the Massachusetts statute reads, "unless it shall appear that such omission was intentional and not occasioned by mistake or accident." In *Ramsdill v. Wentworth,* 106 Mass. 320, it was held that the clear inference from the use of the words, "unless it appears," etc., is that the burden of proof is on those claiming that the omission of the child from the will was intentional. The difference between the Massachusetts statute and our own is important on the question of the burden of proof. There, the child or grandchild omitted from the will receives a distributive share, *unless it appear that the omission was intentional, and not occasioned by mistake or accident;* here, he receives such share, *if it appear that his omission from the will was not intentional, but was made by mistake or accident.* It seems to us that, under our statute, the inference that the burden of proof is on the pretermitted child is as clear from the words, "and it shall appear that such omission was not intentional, but was made by mistake or accident," as that drawn by the court in *Ramsdill v. Wentworth, supra,* from the words, "unless it appears," etc. Under section 149, a child omitted from the will must show two things: First, that he was omitted therefrom; second, that such omission was not intentional. It is only when he has shown both of those facts that he

is entitled to a share of the estate. The omission to provide for the child in the will, though unintentional, furnishes no ground for objecting to the probate of the will, but the remedy is after probate and by construction. *Doane v. Lake,* 32 Me. 268; *Schneider v. Koester,* 54 Mo. 500; *Pearson v. Pearson,* 46 Cal. 609. Hence, to hold that the burden of proof is on the parties claiming the omission was intentional, would be to hold, in effect, that, after the will has been admitted to probate as the solemn declaration of the testator's intentions as to the disposition of his property and those whom he had selected as proper objects of his bounty, it fails, *prima facie,* to express such intentions. It may be said that it is to be presumed that a testator would not intentionally fail to provide for a child or grandchild. If there is the slightest presumption of that kind, it is far weaker than the presumption that one, competent to make a will and to understand its contents, would forget or overlook one of his children or grandchildren. To fail to make provision for a child or grandchild in a will is a common occurrence; to forget or overlook them, under ordinary circumstances, is rare. In our opinion, the burden of proof was upon the interveners to show that their omission from the will was unintentional, and the result of accident or mistake. In reaching this conclusion, we have not overlooked *Stebbins v. Stebbins, supra.* The decision in that case is based on a statute worded like our own. The majority opinion merely holds that the evidence was sufficient to warrant the submission of the question whether the omission was intentional to the jury, and does not discuss the question of the burden of proof. In an able dissenting opinion, by Montgomery, J., concurred in by McGrath, C. J., that question is discussed at length, and the conclusion reached that the burden was on the party claiming that the omission was unintentional. On the facts stated, the majority opinion is not necessarily in conflict with the conclusion reached by the minority on that question. Hence, the dissenting opinion may be regarded as authority for the con-

struction we have placed on the section under considera-
tion, and, so far as our research has extended, is the only
attempt at a judicial interpretation of the language of that
section.

Some of the questions presented by the record require
more specific attention, and we shall now proceed to
consider them. It is contended that the court erred in
permitting intervention after a decree for a partition of the
lands had been entered. This contention is based on sec-
tion 50a of the code, which provides that "any person who
has or claims an interest in the matter in litigation, * * *
may become a party to an action between any other per-
sons, * * * either before or after issue has been joined in
the action, and before the trial commences." But, however
that section may affect the right of a party to intervene,
we are satisfied that it was not intended, and should not
be permitted, to require a court to pursue an erroneous
theory to a worthless decree, nor to curtail in any degree
its power to do complete justice, so long as it retains juris-
diction of the cause and the parties. See section 46 of the
code. The present case will illustrate our meaning. It is
a suit in equity in which the children of the testator claim
title in fee to the lands to the exclusion of all other per-
sons. Proceeding on the theory that they were the ex-
clusive owners in fee, the court entered a decree and di-
rected a sale. It was then brought to the attention of the
court that the interveners claimed an undivided interest
in the estate. That such claim was brought to the atten-
tion of the court by their petition of intervention is wholly
immaterial, so long as the court was satisfied that there
might be some basis for the claim. Will it be claimed
that the court was bound to disregard such claim, because
it was not brought to its attention before decree, and to
proceed to a sale of a doubtful title? To those who had
actual knowledge of the interveners' claims, such claims,
undetermined, would be more than likely to prevent a
sale; a sale to one not having such notice would amount
to a judicial fraud. The court still retained jurisdiction of

the cause and the parties, and it seems to us it was not only its right, but its duty, to hear and determine the claims of the interveners, although not presented until after decree.  It is true the sale was made under the decree as it stood when the petition in intervention was filed, but that appears to have been with the consent of the interveners who joined in the motion to confirm, and who asked only a share of the proceeds.  Although our attention has been called to no case directly in point, we are all of the opinion that, under the peculiar facts disclosed by the record, it was not error to permit the interveners to come into the case after decree.

It is argued, at some length, that the court erred in overruling the demurrer to the petition of intervention. As such petition stood when the demurrer was overruled, it was based on the theory that the interveners, who it will be remembered are grandchildren of the testator, were included within the term "children" in the residuary clause of the will.  That theory, to our minds, is untenable.  It is a familiar rule of construction that, ordinarily, words should be taken in the sense in which they are commonly used.  It is a matter of common knowledge that, in ordinary conversation and the affairs of life, the word "child" is commonly used to designate a son or daughter, a male or female descendant of the first degree.  Such is Webster's definition of the term, and such is its primary signification according to all standard lexicons.  It is safe to say that, standing alone, it is never understood to mean grandchildren.  Bouvier says: "The term children does not, ordinarily and properly speaking, include grandchildren or issue generally; yet sometimes that meaning is affixed to it in cases of necessity." *In re Estate of Chapoton*, 104 Mich. 11, 61 N. W. 892, the court, referring to the language of Bouvier said:

"We shall find this statement of Bouvier confirmed in many cases involving wills, although cases are not rare where the term 'children' has been held coextensive with 'issue' or 'descendants.'  Such holdings are not put upon the

ground that the word 'children' has a technical or peculiar meaning in the law, but because such meaning is necessary to give effect to the instrument, or because of an evident intent upon the part of a testator. It is in deference to the rule that the intent is to be sought after and given effect in the construction of wills, which may be done to the extent of holding illegitimate children to be included in the term, 'children,' though the law ordinarily excludes them. See Bouvier, Dictionary, title Child, subdivision 3; *In re Curry's Estate*, 39 Cal. 529; 4 Kent, Commentaries, 345. In *Reeves v. Brymer*, 4 Ves. (Eng.) 692, cited by counsel, the court said that 'children' may mean 'grandchildren,' where there can be no other construction, but not otherwise. *Pride v. Fooks*, 3 De Gex & J. (Eng.) *252."

It is obvious, from the portions of the will heretofore set out, that no strained or unusual meaning of the word "children" is required to give effect to the instrument, or to carry out the intention of the testator. It is clear, therefore, that the interveners were not included in the residuary clause of the will, and that their original petition of intervention, based on the theory that they were thus included, failed to state a cause of action. But as the court found against that theory, and it was afterwards abandoned by the amendment to the petition of intervention, the overruling of the demurrer was error without prejudice.

It is next contended that the court erred in permitting the amendment to the petition to the effect that the interveners had been omitted from the will by accident or mistake. The amendment was made after the case had been tried, and after the defendants had interposed proper and timely objections to the petition of intervention, and to the introduction of evidence which would tend to support the issue tendered by the amendment. It is clear, therefore, that the amendment was not warranted as an amendment to conform to the proof, because it is a familiar rule that an amendment of that character is permissible only

where the evidence tending to sustain the amendment has been received without objection. But, after the amendment was made, the case was opened, and the parties were permitted to introduce evidence, and were given a hearing on the issue tendered by the amendment. What has been heretofore said on the question of the right of the interveners to come into the case after decree is applicable here. If the evidence taken before the amendment was offered was of such a character as to satisfy the court that it would be unable to convey a clear title by a sale of the lands, without a further investigation of the claims of the interveners, it was eminently proper to permit the amendment, and give all of the parties an opportunity for further investigation and hearing. Such a course, it seems to us, was in the interest of all parties to the suit, and one of which none should be heard to complain, especially when the interest of minors is involved.

Another contention of the defendants is that the finding of the district court, that the omission of the interveners from the will was unintentional, is not sustained by sufficient evidence. The testator was 76 years old. The evidence, on the one hand, tends to show that his memory was greatly impaired; on the other, that it was unusually retentive for a man of his years. . There is little evidence bearing directly on what his intentions were with respect to the interveners at the time the will was made. On the part of the interveners, it was shown that, after the will was made, the testator repeatedly stated that he had made provision therein for all his grandchildren; that he had given them $100 each, except one who was an imbecile, to whom he stated he gave nothing because of his mental condition. That particular grandchild is not a party to this suit, and is not of the same parents as the interveners. On the part of the defendants, it was shown that, at the time the will was made, the attention of the testator was specifically called to the omission of the three grandchildren from the will, but, notwithstanding that fact, he executed it without any alteration, and showed by his words

and conduct that he was fully aware of the omission, and that it was intentional; that, after the will was made, he talked over the contents with a witness in the suit, and, in such conversation, the omission was pointed out to him, and he was asked why he had not provided for the other grandchildren, and he gave his reasons for the omission. The evidence further shows that there was some trouble between the testator and the interveners or some member of their family, the exact nature of which is not clearly disclosed. There is also evidence tending to show that the failure of the testator to recognize acquaintances on the street was due, rather to his defective eyesight, than to any impairment of memory.

By the pleadings on file in this suit, both the interveners and the defendants are committed to the theory that the will was duly admitted to probate. The decree of the county court admitting the will to probate is conclusive on all parties as to its due execution, and all questions affecting the competency of the testator to make a will. 2 Black, Judgments (2d ed.), sec. 635. Hence, it stands as one of the established facts in this case that the testator, at the time the will was made, was not lacking in testamentary capacity. In other words, it is conclusively established by the probate of the will that, at the time it was made, the testator possessed sufficient mind to understand, without prompting, the business about which he was engaged, the kind and extent of the property to be willed, the persons who were the natural objects of his bounty, and the manner in which he desired the disposition to take effect, because that is all included in the findings on which the decree admitting the will to probate is based. Schouler, Wills (3d ed.), sec. 68. In view of the fact that the will had been admitted to probate, and the testamentary capacity of the testator thereby set at rest, we think the evidence is insufficient to sustain a finding that the omission of the interveners was unintentional. As stated in a former part of this opinion, the burden of proof was on the interveners. The testimony adduced by them

is not wholly inconsistent with the theory that the omission was intentional.   On the other hand, the testimony adduced by the defendants, at least a portion of it, is of such a character that it must either be rejected, or the omission held to have been intentional.   None of the witnesses are discredited; on the contrary, it would seem that each gave the facts as he understood them.   Hence, there is no ground for rejecting the testimony showing affirmatively that the testator knew of the omission, and that it was intentional.   An examination of the entire evidence satisfies us that the finding of the district court is erroneous.

It is recommended that the decree of the district court be reversed and the cause remanded for further proceedings according to law.

GLANVILLE, C., concurs.   FAWCETT, C., not sitting.

By the Court:   For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.