SAMUEL R. ROBERTS, APPELLEE, V. LAURA S. T. COX,
APPELLANT.

FILED MAY 29, 1912. No. 16,709.

1. **Contracts:** REQUISITES. "To establish an express contract· there
   must be shown what amounts to a definite proposal and an un-
   conditional and absolute acceptance thereof." *Melick v. Kelley,*
   53 Neb. 509.

2. **Specific Performance:** CONTRACT: EVIDENCE. The transactions be-
   tween the parties examined and set out in the opinion, *held*
   insufficient to establish the contract alleged in plaintiff's petition.

APPEAL from the district court for Scott's Bluff county:
HANSOM M. GRIMES, JUDGE. *Reversed with directions.*

*L. L. Raymond,* for appellant.

*Wright, Duffie & Wright,* contra.

FAWCETT, J.

Plaintiff brought suit in the district court for Scott's
Bluff county for the specific performance of a contract of
sale from defendant to plaintiff of the southwest quarter
of section 7, township 21, range 53, in that county. From
a judgment in plaintiff's favor, defendant appeals.

Succinctly stated, the correctness of the judgment de-
pends upon the question whether plaintiff ever uncondi-
tionally accepted any offer to sell made by defendant, or
defendant ever unconditionally accepted any offer to pur-
chase made by plaintiff.

The negotiations between defendant, who resided in
Chicago, and plaintiff, who resided in Scott's Bluff county,
were conducted by one John C. Trotter, a real estate
agent, who also resided in Scott's Bluff county. Some
time about or shortly prior to June 1, 1908, defendant
gave Mr. Trotter the following written authorization:
"Mr. Trotter is authorized to sell my place adjoining
town of Minatare for $105 an acre, within six months from

June 1st, 1908. ½ cash if he can get it, not less than $6,000 cash in any case, the remainder at 7% secured by first mortgage on the farm. Mr. Trotter to receive the regular commission of $50 on the first thousand and $25 on each succeeding thousand dollars of the purchase price. (signed) Laura S. T. Cox." On this memorandum Mr. Trotter indorsed the following: "I hereby accept the selling of the within named place or farm in accordance with the terms within named. (signed) John C. Trotter." Mr. Trotter did not succeed in selling the farm within the six months, and on December 4, 1908, defendant wrote him as follows: "My Dear Mr. Trotter: Ever since I received your letter, have been trying to decide what should be done about this matter. It is like this to me. I feel that I must have the $16,000 clear. Perhaps if you show this letter to your buyer, he will realize that you are not trying to deceive him in any way about the commission. If he will pay me $16,000 and your regular commission, abstract fees and any other expense of the transfer which may not occur to me, I am rather inclined to let it go, provided he will pay $3,000 or $4,000 down when he gets deed and possession. I would not feel safe to take less down than $3,000. If he will be able to do this by March 1st, the sale can wait till that time. My tenant gets a forfeit from me if I sell under three seasons, and this I will pay. Your client can see that at $105 per acre I should get a mere trifle above $16,000, but I am not so determined about this that I might not let it go, if other conditions suited." On February 22, 1909, Mr. Trotter not having effected a sale, defendant wrote him as follows: "My Dear Mr. Trotter: Have been thinking some more about the farm deal and decided should your man be of the same mind still that I would write and offer to split the commission and transfer expenses with him, that is, he to pay $16,000 for the place, and one-half of your commission, and any other transfer expense. If he will pay down not less than $3,000, or as much more as he chooses, and $3,000 more

in a year from time of sale, he can have any reasonable time on the remainder at 7 per cent. He can have until May 1st to do this, if he wants to do it. But as you know, I'm not anxious at all about selling, so it is all right, if he don't agree to my proposition. I would not take less than $3,000 down, and would prefer $4,000."

All of the authority conferred upon Mr. Trotter on or prior to April 19, 1909, is contained in the written memorandum and two letters above set out. On the last named date negotiations between plaintiff and Trotter were reduced to writing, as follows: "Minatare, Nebraska, April 19, 1909. This contract and agreement entered into by and between Laura S. T. Cox, party of the first part, and S. R. Roberts, of Scott's Bluff, party of the second part, witnesseth: That for and in consideration of the sum of $16,425 to be paid by the said party of the second part, to the said party of the first part in the time and manner hereinafter specified, the said party of the first part has agreed to sell, and convey to the said party of the second part the following described land in Scott's Bluff county, Nebraska, to wit, the southwest one-fourth of section seven, township twenty-one, range fifty-three, less ten acres already sold on north side, but still containing one hundred and sixty acres. And the said party of the second part has agreed to purchase all of the above described land, and to pay for the same the said sum of $16,425 in cash, as follows, $100 cash in hand at the signing of this contract, the receipt whereof is hereby acknowledged, and that $2,900 be paid on June first, 1909. And $3,000 June first, 1910. Interest at 7% per annum, and $10,425 to be paid June 1st, 1914, interest 7 per cent. per annum. And it is further agreed that at the time of payment of $2,900 June first, 1909, party of the first part will convey by good and sufficient warranty deed, the above described real estate, consisting of one hundred and sixty acres together with all the improvements belonging to her, thereon, together with four shares of Minatare Mutual Ditch stock. The party of the first part

hereby agrees that party of the second part shall have and collect the rent from said premises for the year 1909. And the party of the first part hereby agrees to furnish abstract showing clear title to all of said land, in the said party of the first part at the time of said transfer, and further agreed to give party of the second part possession of said premises March first, 1910. And it is further agreed that the covenants and agreements herein contained shall be binding on the heirs, executors and assigns of the parties hereto. In witness whereof, the said parties have caused these presents to be executed in duplicate and have hereunto set their hands this 19th day of April, 1909. In presence of J. C. Trotter. (signed) S. R. Roberts."

On the same day Mr. Trotter made and delivered to plaintiff a receipt as follows: "April 19, 1909. Received of S. R. Roberts check for $100 for payment on land S. W. $\frac{1}{4}$ sec. 7-21, as per contract of this date. J. C. Trotter."

On May 9, after having received the proposed contract of April 19, defendant wrote Mr. Trotter as follows: "My Dear Mr. Trotter: Your note and contract for deed came to hand as well as the telegram, but you must have mistaken the sense of the agreement I made to sell quite a little. No one that I know of out there has given more than two shares of water with a quarter section of land, and as I knew this at that time as much as now, I cannot think I promised four water rights with my land. Then as to this contract, I would not sign anything of this kind, if I understand it, at all. It seems to me to bind me to sell my land with only $100 down, and no security whatever. Now, Mr. Trotter, you know, no man would let property go in this way, and though I'm a woman I'm trying to learn about business, and I surely cannot. Had the three or four thousand been in the Minatare or S. Bluff Bank, for me, when you wanted me to contract away my land, it might have been different, but we may as well drop this selling for the present. I don't see why this year's rent could be expected anyway, when the ten-

ant I have must have his year's crop begun, and should I make a sale to any one, it would always have to be, subject to any lease had previously contracted. I have taken some time to think of this, but I can't sign away the most valuable piece of property I have in this way. So drop everything about the farm until I come out which will be sometime in July." The letter then speaks of some other properties, and concludes: "But you know I've told you all the time I am not anxious to sell the land next to the town. I am not giving the right to sell any of my property to any one else. You shall sell it, when it goes. This much is due you for the trouble you have already taken about it. Am sorry to disappoint you by returning this contract unsigned, but it would not give me a safe deal, and I cannot do it. Better luck next time. Very truly, (signed) Laura S. T. Cox."

On May 16, 1909, and after receipt of the above letter, Mr. Trotter had prepared and signed by plaintiff another proposed contract, as follows: "Minatare, Nebraska, May 16th, 1909. Whereas on the 19th day of April, 1909, a certain contract in writing for the sale of the southwest one-fourth of section seven, township twenty-one, range fifty-three, in Scott's Bluff county, Nebraska, wherein Laura S. T. Cox is party of the first part, and S. R. Roberts of Scott's Bluff is party of the second part; and whereas it is stated therein that party of the first part as consideration for said lands is to receive therefor the sum of $16,425 cash, part in money in hand, and the balance in payments, and whereas through the mistake, inadvertence and oversight of the party drafting the writing omitted therefrom the matter and manner of the securing of the said balance of deferred payments: Now, this writing is made and executed for the purpose to set forth the whole of said contract, and the said omission therefrom so as to show the contract as made by and between said parties which is as follows, to wit: Minatare, Nebraska, April 19th, 1909. This contract and agreement entered into by and between Laura S. T. Cox,

party of the first part, and S. R. Roberts of Scott's Bluff, party of the second part, witnesseth: That for and in consideration of the sum of $16,425 to be paid by the said party of the second part to the said party of the first part, in the time and manner hereinafter specified, the said party of the first part agrees to sell and convey to the said party of the second part the following described land in Scott's Bluff county, Nebraska, to wit: The southwest one-fourth of section seven, township twenty-one, range fifty-three, less ten acres already sold on the north side, but still containing one hundred and sixty acres. The said party of the second part agrees to purchase all of the said one hundred and sixty acres of land described above and to pay to the said Laura S. T. Cox therefor the said sum of $16,425 in cash as follows: $100 cash in hand at the signing of this contract, the receipt whereof is hereby acknowledged, and the sum of $2,900 on the first day of June, 1909. The sum of three thousand dollars on the first day of June, 1910, with 7% interest from June first, 1909, to be evidenced by the negotiable promissory note of the party of the second part, bearing date June first, 1909, and to be secured by the first mortgage on said land of the party of the second part to the party of the first part duly executed and delivered, and the further sum of ten thousand four hundred and twenty-five dollars on the first day of June, 1914, with interest thereon at seven per cent. per annum payable annually to be evidenced by the negotiable promissory note of the party of the second part to party of first part, bearing date June 1st, 1909, and to be secured by the first mortgage on said land of party of second part to the party of the first part. It is further agreed that at the time of the payment of said two thousand nine hundred dollars, June first, 1909, or as soon thereafter as practicable, the said party of the first part will convey by good and sufficient warranty deed the above described real estate, consisting of 160 acres together with all the improvements belonging to her thereon, together with four shares of the Minatare

Mutual Ditch stock. The party of the first part hereby agrees that party of the second part shall have and collect the rent from said premises for the year 1909. And the party of the first part hereby agrees to furnish abstract showing clear title to all of said land in the said party of the first part at the time of said transfer, and further agrees to give party of the second part possession of said premises March first, 1910. And it is further agreed that the covenant and agreement herein contained shall be binding on the heirs, executors and assigns of the parties hereto. In witness whereof, the said parties have caused these presents to be executed in duplicate and have hereunto set their hands this 19th day of April, 1909. In the presence of J. C. Trotter. (signed) S. R. Roberts." When this document was sent to defendant she made no answer to it, for the reason, as she testified, "I supposed what I had written before was all that was necessary."

It is upon this record that plaintiff bases his claim for specific performance of this so-called contract. We deem. it unnecessary to enter upon any extended discussion of this record. It shows upon its face that Mr. Trotter had no authority to bind the defendant, as was attempted to be done, by either the agreement of April 19 or the amended agreement of May 16. That plaintiff knew the limitations upon Trotter's authority is fully shown by the uncontradicted testimony of Mr. Trotter, who, when introduced as a witness by plaintiff, testified: "The fact of the business is, that I submitted the correspondence between me and Mrs. Cox to Mr. Roberts to see what I could do. I followed Mrs. Cox's instructions as near as I possibly could. It was not my understanding that I was to do this, but there is nothing in this transaction that Mr. Roberts did not understand. He knew just what I could and what I could not do. There is nothing about this that I wish to withhold from the court, and I will answer anything." And again: "I did not put up any talk to Mr. Roberts, I simply showed him the correspondence, and showed him what I thought I had authority to

do." Again: "Q. Did you show him Mrs. Cox's letters? A. With reference to the contract, I certainly did. Yes. Q. You showed him all you had? A. Yes, sir."

This is not, therefore, a case where plaintiff was dealing with an agent and relying upon any ostensible authority on the part of the agent. He knew exactly what the agent's authority was and the terms upon which the agent was authorized to sell defendant's farm. The terms proposed by defendant were not unconditionally accepted by plaintiff. Even in the amended contract of May 16 it is attempted to bind defendant to do things which she had never promised to do, and some of which, in her letter of May 9, 1909, she had expressly refused to do. It is clear that defendant never authorized the making of either the contract or amended contract, under which it is sought to bind her, and that the minds of the principals to this contract never met. It is also clear that by the letter of May 9 defendant declined plaintiff's offer to purchase, as outlined in the proposed contract of April 19, refused to sign or in any manner ratify that contract, and withdrew her farm from Mr. Trotter; and that thereafter he was without authority to in any manner represent or bind her in reference thereto. It follows that the district court was in error in awarding plaintiff specific performance of this so-called contract.

As the entire transaction between plaintiff and defendant, and Trotter, as defendant's agent, is fully disclosed by this record, and it clearly appearing therefrom that plaintiff is not entitled to any relief at the hands of defendant, this vexatious litigation against her should end. The judgment of the district court is therefore reversed and the cause remanded, with directions to the district court to dismiss the suit at plaintiff's costs.

REVERSED.

LETTON, J., not sitting.