DEPARTMENT OF BANKING, RECEIVER, V. ALBERT STENGER: FIRST TRUST COMPANY OF LINCOLN, TRUSTEE, APPELLANT: KATHERINE CHARNLEY, APPELLEE.

272 N. W. 403

FILED APRIL 8, 1937. No. 29883.

*Hall, Cline & Williams,* for appellant.

*Wagner, Wagner & Albert* and *Waldron, Newkirk & Mathews, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and ELDRED and CHASE, District Judges.

CHASE, District Judge.

This is a suit in equity praying for specific performance of an alleged contract to assign a mortgage decree. The

parties interested in the appeal are the First Trust Company of Lincoln, appellant, and Katherine Charnley, appellee.

The appellee, claiming to be assignee of a decree in foreclosure entered by the district court for Platte county, presents her petition in that court for leave to intervene and establish her title to such decree. The appellant, by special appearance, challenged the jurisdiction of the court, which was overruled, and appellee was permitted to appear by way of intervention in the foreclosure proceeding to establish title to and specifically perform her contract of assignment. The case was tried on the merits, resulting in a finding in favor of intervener on her petition, from which the First Trust Company, as successor-trustee, appeals to this court.

It is contended that the court erred in overruling the special appearance and permitting intervener to appear in the foreclosure proceeding to litigate her right to specific performance of the alleged contract of assignment.

Appellant argues that an application for intervention to be allowable must be filed before decree. In view of the prior holdings of this court, such position is wholly untenable. The courts recognize two methods by which intervention may be accomplished. One is statutory and is allowed as a matter of right, in which case the petition must be filed before decree. The other is a matter of equitable discretion growing out of the powers inherent in a court of equity. This existed prior to the enactment of the statute, and still exists independent thereof. In the latter case a court has jurisdiction to entertain the application at any time during the pendency of the proceedings if, in its discretion, it is essential to administer complete relief between all parties before it. *Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co.,* 126 Neb. 744, 254 N. W. 507; *State v. Farmers State Bank,* 103 Neb. 194, 170 N. W. 901; *Brown v. Brown,* 71 Neb. 200, 98 N. W. 718; *Engdahl v. Laverty,* 110 Neb. 672, 194 N. W. 862.

The appellant, on the 7th day of November, 1934, ob-

tained a decree of foreclosure in the district court for Platte county, Nebraska, against real estate owned by one Albert Stenger and wife, by which there was found to be due this appellant the sum of $16,015, with interest at 10 per cent. per annum, and further finding that said mortgage was a first lien upon the premises. On August 20, 1935, Katherine Charnley, this appellee, presented a petition in intervention in that court, alleging that since the rendition of the decree one O. F. Schlaebitz, assistant trust officer and manager of the appellant, entered into an agreement to assign said decree to her. The negotiations therefor on her behalf were carried on by her attorney, C. L. Waldron, of Omaha, Nebraska; that in the negotiations for such assignment the said Schlaebitz represented the appellant and all persons owning certificates of participation in the decree; the consideration therefor being $12,500.

Suits to foreclose mortgages must be brought in the county where the real estate or some part thereof is situated. This doctrine is so well established that it is not necessary to quote either the statute or the decisions relating thereto. Section 20-403, Comp. St. 1929, provides that actions to compel specific performance of a contract for the sale of real estate *may* be brought in the county where the defendants or any of them reside.

In a foreclosure proceeding where the statute requires the suit to be brought in the county where the land is situated, the court may acquire jurisdiction over the parties to determine their interests in the subject of the controversy whether it involves title to the real estate or ownership of the mortgage lien. The word "may" as used in the specific performance statute does not mean "must," and suits for such relief may be brought in any county where the parties are properly before the court. *Pollard v. Larson*, 115 Neb. 136, 211 N. W. 998; *Miller v. Ruzicka*, 109 Neb. 152, 190 N. W. 216.

The appellant, by statute, was required to select its forum in Platte county in order to subject the real estate to the satisfaction of the mortgage lien. This was the only

court in which the appellant, or any one who may have succeeded to its rights, could have received the proceeds of the sale of the real estate in satisfaction of the mortgage lien. Legal proceedings in any other forum to obtain such relief would result in useless litigation. The argument of the appellant is that the court in the county where the owner of the decree sought to be assigned resides, or may be summoned, is the proper forum in which to litigate the matters presented by the petition for intervention. The futility of such an argument is obvious, since a court in any other county except the one where the foreclosure proceeding is pending would not be invested with power to extend complete relief to the parties. Only the court where the foreclosure proceeding is pending would have such jurisdiction over the *res* as to order sale of the property, from which funds could be obtained to satisfy the decree. In view of the foregoing, the trial court was correct in overruling this special appearance.

Appellant further contends that the evidence does not establish a sufficient meeting of minds to constitute a contract of assignment.

The appellee owned tax liens and a second mortgage on the real estate involved, and is also a sister of the owner of the equity of redemption. Appellant is successor-trustee to the Lincoln Trust Company, which was the original mortgagee. It appears that certificates of participation in the original mortgage debt were sold by the mortgagee to various investors who, for the purpose of this record, will be referred to as bondholders. Mr. Schlaebitz is the managing trust officer of the successor-trustee.

The facts relied upon to constitute such a contract consist mostly of correspondence. It appears that on March 20, 1935, the appellee through her attorney wrote a letter to appellant stating that she would put up $10,000 cash for an assignment of the bondholders' interest in the mortgage decree. On March 22 following the appellant replied stating that the proposition would be submitted to the bondholders for their consideration, acceptance or rejection, informing

appellee that the final answer rested with them. On March 30 following appellant again wrote appellee that there had been a meeting of the bondholders and all were present except two; that at this meeting the appellee's offer was rejected, and stating further that the bondholders were willing to accept not less than $12,500 for the assignment of the decree, fixing the time limit for payment as of May 1, 1935. In a postscript the appellee was informed that any counter-proposal must be subject to the bondholders' approval. On April 26 following appellee wrote to appellant stating she would raise the former offer to $11,400, and if this was acceptable appellee would immediately make a payment of $500 as evidence of good faith, stating further that this was the best and final offer. On May 29, in reply to appellee's last letter, appellant wrote that the counter-proposal was rejected, stating that the bondholders "are still insisting on being paid the sum of $12,500 in full payment." Apparently not receiving a prompt reply to the last letter, appellant wrote appellee again inquiring whether she would meet the bondholders' requirement and pay the sum of $12,500. At this point the evidence is slightly in conflict. It appears that appellee's attorney, Mr. Waldron, had a conversation with Mr. Schlaebitz, representing the appellant, in which Waldron testifies that on June 13 he inquired whether appellant would reduce its demand to $12,000. Mr. Schlaebitz testifies concerning this meeting that Mr. Waldron stated he thought his client would make an offer of $12,000 provided these bondholders, who up to this time had rejected the offer of $12,500, would indicate they would be inclined to accept $12,000. The substance of this conversation being that Waldron would raise his offer to $12,000 if it could be ascertained beforehand whether or not it would be accepted. Following this conversation, on June 29, appellant wrote another letter to appellee stating that one of the bondholders, Mr. W. W. Wilson, of Nebraska City, had inspected the land in the meantime and was unwilling to accept the offer of $12,000 for a compromise settlement, further notifying appellee that, "since he is un-

willing to agree," appellant is of opinion that no contract assignment can be concluded. On July 3 following appellee wrote appellant that she had concluded to accept the original offer of $12,500 for a settlement of the mortgage decree, and inclosed her draft for $500 as evidence of good faith, which draft was cashed by the successor-trustee and temporarily passed to the credit of appellant. Upon receipt of the draft appellant wrote to one B. E. King, a bondholder, who had never assented to any of the negotiations, stating what had been done and asking if he would accept the offer. Mr. King, at the bottom of the letter, replied, "I do not agree to accept the offer on the terms above indicated." On July 11, having received a letter from bondholder King rejecting the offer, appellant mailed its check to appellee covering the deposit payment of $500, stating that bondholders representing a substantial amount of the bonds had refused to accept the offer, one particularly stating that the time fixed for meeting the demand was May 1, 1935.

Our interpretation of the correspondence and the testimony on this point is that the original letter of appellee to pay $10,000 merely opened negotiations for the purchase of the decree. The reply thereto stating that the bondholders would not consider anything less than $12,500 constitutes the first offer. When appellee made the counter-proposal to pay $11,400, she thereby rejected the offer, and unless subsequently renewed, the original offer, as a matter of law, would be considered withdrawn.

Every contract is the result of an offer and acceptance thereof. The law requires the acceptance to be identical upon every point with the offer or there is not sufficient meeting of minds to amount to a binding obligation. *Detroit Copper & Brass Rolling Mills v. Wise*, 297 Fed. 460; *United States v. Carlin Construction Co.*, 224 Fed. 859; *Roberts v. Cox*, 91 Neb. 553, 136 N. W. 831; *Melick v. Kelley*, 53 Neb. 509, 73 N. W. 945.

Where one to whom an offer is made makes a counter-proposition of different terms and new conditions, such counter-proposition amounts to a rejection of the offer.

*Doyle v. Hamilton Fish Corporation*, 234 Fed. 47; *Pollak v. Roberts*, 45 N. Dak. 150, 176 N. W. 957.

A counter-proposition to an offer amounts to a rejection of the offer and a substitution therefor of the counter-proposition. In such case the original offer loses its vitality and is no longer binding upon the party making it. The party submitting the counter-proposition cannot, of his own option, revive and accept the original offer which he has rejected. *Lewis v. Johnson*, 123 Minn. 409, 143 N. W. 1127. It will be observed that there can be no contract unless the minds of the parties have met and mutually agreed. Since appellant stated its position in answer to the appellee's first negotiations to be willing to accept not less than $12,500, the appellant occupies the position of the offerer and appellee that of offeree. The appellee making the counter-proposal of $11,400 amounts to a rejection of the offer, which destroys all its vitality unless it can be said it is subsequently renewed. Even though it may be argued that appellant's attitude in the letter of May 29, 1935, wherein appellee was informed that the bondholders were still insisting on being paid the sum of $12,500 amounts to a re-offer, the oral testimony fairly establishes that after making the counter-proposal of $11,400 appellee made another counter-proposal of $12,000 which, had this been a renewal of the original offer, would likewise amount to a rejection thereof.

From the most liberal construction which can be placed upon the facts presented by the record, we are constrained to hold that, when appellee wrote her final letter, claiming to accept appellant's original offer, the appellant's offer had ceased to have any legal existence, and, as a result, there was nothing left to accept upon which the minds could meet to constitute a binding contract.

The courts hold that a revivor of a rejected offer is as essential a part of a contract as the original offer in the first instance. *Lewis v. Johnson, supra.*

The trial court erred in finding appellee to be the owner of the decree in foreclosure. The part of the decree over-

ruling the special appearance is affirmed; that finding appellee to be the owner of the decree of foreclosure is reversed.

AFFIRMED IN PART AND REVERSED IN PART.