FARMERS UNION FIDELITY INSURANCE COMPANY, A CORPORATION, APPELLANT, V. FARMERS UNION CO-OPERATIVE INSURANCE COMPANY, A CORPORATION, APPELLEE.

26 N. W. 2d 122

FILED FEBRUARY 14, 1947. No. 32139.

*H. G. Wellensiek* and *W. P. Loomis,* for appellant.

*Harold A. Prince* and *Arthur C. Pancoast,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

The Farmers Union Fidelity Insurance Company, a corporation, brought this action in the district court for Douglas County against the Farmers Union Co-Operative Insurance Company, a corporation. The purpose of the action is to recover that part of a loss sustained on its policy issued to Wm. Boehnke which it claimed had been reinsured with the defendant. From a judgment for the defendant, its motions for new trial and to retax costs having been denied, the plaintiff appeals.

For convenience the appellant will be referred to as plaintiff and the appellee as defendant.

The first question that presents itself is whether or not the judgment of the trial court is sustained by the evidence. In order to recover the plaintiff must establish that there was a contract of reinsurance under which it seeks to hold defendant liable.

Since this is a law action tried to the court we apply thereto the following rule: "* * * where the testimony is in conflict and a jury is waived and trial is had to the court, the court's findings have the effect of a jury verdict, and will not be set aside on appeal unless clearly wrong." Chicago & N. W. Ry. Co. v. Mallory, *ante* p. 548, 23 N. W. 2d 735.

The record discloses that on September 20, 1939, and effective as of that date, the plaintiff and defendant entered into a mutual reinsurance contract. By the terms of this contract it is provided: "3. Reinsurance shall be applied for by either company to the other upon forms to be agreed upon, and upon approval of such applications, the reinsurance shall be effective and the reinsuring company shall thereafter send the reinsured company a certificate or policy of reinsurance." This contract also provided: "1. * * *

upon acceptance of which the reinsurance shall be identical with the conditions of the reinsured company's policies, and shall be subject to the same risks, conditions, valuations, endorsements, assignments, cancellations, and transfers as are or may be assumed by the reinsured company."

Thereafter, on October 4, 1939, Wm. Boehnke made application to the plaintiff for insurance, both fire and windstorm, as follows: Barn and granary $1,125, hog house $300, and chicken house $100. Pursuant thereto and dated October 9, 1939, but effective as of October 4, 1939, the plaintiff issued its policy No. 00442 to Wm. Boehnke to cover the foregoing risk.

This policy had a standard mortgage clause thereto attached in favor of Carl A. Busskohl which provided, among other things, as follows: "This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee * * * for ten days after notice to the mortgagee * * * of such cancellation * * *."

On October 25, 1939, pursuant to the contract for reinsurance, the plaintiff sent the defendant nine applications for reinsurance including that of Wm. Boehnke. The application for reinsurance on Wm. Boehnke is dated October 25, 1939, and requests reinsurance, effective as of November 4, 1939, to the extent of 50 percent of the risk, to wit: Barn and granary $562.50, hog house $150, and chicken house $50, at a premium assessment of $1.61 for 11 months.

On October 26, 1939, defendant wrote plaintiff regarding the applications sent on October 25, 1939, and particularly with reference to the Wm. Boehnke policy as follows: "We have received the reinsurance applications enclosed in your letter dated October 25 and find them satisfactory with the exception of the following: * * * Policy #442- Wm. Boehnke: We have also changed the amount of insurance on the granary under policy #442 from $562.50 to $550. This changes the amount to $158.00." The latter figure was

intended to be $1.58 and reduces the premium assessment by reason of the policy change from $1.61 to $1.58.

Nothing further was done in regard thereto until the plaintiff wrote the defendant on November 28, 1939, as follows: "Please be advised that Policy #442 in the name of Wm. Boehnke has been cancelled and therefore we will not require reinsurance on same. This application was sent in to your office sometime in October. However, we have not as yet received the certificate and it should not inconvenience you in any way. You will, of course, just disregard the application."

Nothing had been done on this application and upon receipt of this letter defendant wrote across the face thereof "11-29-39 cancelled." No certificate was ever issued thereon. Neither was request ever made for any premium or assessment nor was any ever paid. No offer or tender to pay such premium or assessment was made until the commencement of this action on August 21, 1944.

The barn and granary were totally destroyed by fire on November 30, 1939. While the policy itself had been canceled prior thereto, however, the plaintiff was required to pay the loss by reason of the ten-day provision in the mortgage clause. Written proof of this loss was not submitted to the defendant until May 2, 1941, and then in the sum of $562.50.

As stated in Melick v. Kelley, 53 Neb. 509, 73 N. W. 945: "To establish an express contract there must be shown what amounts to a definite proposal and an unconditional and absolute acceptance thereof." As stated in Cooper v. Kostick, 112 Neb. 816, 201 N. W. 674, in quoting from Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665: "That a binding contract may result from an offer and acceptance, it is essential that the minds of the parties meet at every point, and that nothing be left open for future arrangement." See, also, Department of Banking v. Stenger, 132 Neb. 576, 272 N. W. 403. And as stated in Department of Banking v. Stenger, *supra*: "Where one to whom an offer is made

makes a counter-proposition of different terms and new conditions, such counter-proposition amounts to a rejection of the offer. Doyle v. Hamilton Fish Corporation, 234 Fed. 47; Pollak v. Roberts, 45 N. Dak. 150, 176 N. W. 957."

It is self evident that the defendant did not accept the application for reinsurance in the identical form as submitted. It changed both the amount of insurance and premium as set forth in its letter of October 26, 1939. Before a certificate of reinsurance was issued by defendant the plaintiff, under date of November 28, 1939, advised defendant to "disregard the application." It was therefore canceled and no certificate was ever issued. Neither did defendant ever ask for any premium or assessment to be paid thereon nor did the plaintiff either pay or offer to pay any premium until the commencement of this action.

By these negotiations we do not think a contract of reinsurance was ever entered into by these parties. That the plaintiff so admitted is evidenced by its letter of January 22, 1941, to Bowes and Company, Inc., of Chicago, Illinois, wherein they were writing about reinsurance carried with Lloyd's, London, on the Wm. Boehnke loss. Therein plaintiff states: "We hereby certify that we have settled the above amount and have retained the first $1,000 of the loss plus 20% of the excess above that amount."

It is the plaintiff's thought that the reinsurance was in force because of a custom that had developed between the companies in dealing with these applications. This custom was that when the changes made were of a minor nature no reply thereto was necessary and the certificate of reinsurance would be issued as a matter of course. R. D. Campbell, manager of the defendant at the time, testifies thereto as follows: "It was difficult to establish a practice, * * *. Usually when an application was received and there was nothing wrong with it, we tried to issue a certificate. If there was * * * a major change, we would write back on it, do nothing until we had some word from Mr. Witzenburg's company, which might take two or three follow-up

letters. Where there was a minor change we tried to wait for—we would make our change and notify them, and try to wait a period of about thirty days, and if we heard nothing from them, then we would issue a certificate, feeling that they had accepted our counter offer." If no reply had ever been made to the defendant's letter of October 25, 1939, as to the Wm. Boehnke application for reinsurance, then the plaintiff might be in a position to claim the benefit of this custom although no certificate had ever been issued. However, the fact remains that the plaintiff advised the defendant to "disregard the application." As a result it was canceled and no certificate was ever issued. Plaintiff is therefore not in a position to claim any rights by reason thereof.

It is the plaintiff's further contention that prior to the commencement of this action the defendant had taken the position that plaintiff had canceled its contract of reinsurance on the Boehnke risk and therefore cannot now take the position that no contract of reinsurance ever existed. It cites the often-stated rule of law that "It has long been the rule in this jurisdiction that a party who gives one reason for his conduct and decision as to a matter involved in controversy cannot after litigation has begun defend upon another and a different ground. This court approved this rule in a recent case. McDowell v. Metropolitan Life Ins. Co., 129 Neb. 764, 263 N. W. 145." Serven v. Metropolitan Life Ins. Co., 132 Neb. 637, 272 N. W. 922.

It is, of course, self evident from the provisions of the contract for reinsurance, as herein set forth, that if a contract for reinsurance was ever in force on the Boehnke risk the defendant would have the same liability thereunder as the plaintiff. However, the plaintiff is mistaken in its interpretation of the reason for the defendant's refusal to admit liability. In defendant's letter of August 14, 1940, with reference to the subject it stated as follows: "In connection with the possibility of the possible liability of this company on the reinsurance contract, we are, of course, of

the opinion that in order to have this company liable for any portion of the damage it was necessary to have an application submitted and accepted, with the certificate being issued at any time which might be convenient. In this case we find an application had been submitted but that it had been cancelled, and it was in view of this that we were of the opinion the company would be off the risk and have no liability for the damage sustained." This language clearly sets forth that the defendant considered the application to have been canceled before an acceptance thereof and that no contract of reinsurance had ever been in force. This is the same defense as was made in this suit.

Under this construction the effect of the plaintiff's reinsurance of this same risk with Lloyd's, London, contrary to the provision of their agreement becomes immaterial. The agreement provided: "That the reinsured company shall retain at its own risk, and without reinsurance, at least fifty (50%) per cent of the total insurance written on the identical property reinsured with the reinsuring company." In order for this provision to become material there must be a policy of reinsurance in effect which could be affected thereby.

The plaintiff, by its motion to retax costs, raises the question of the correctness of the trial court's order taxing to plaintiff the costs of certain depositions taken by the defendant but not actually used during the trial.

During the trial the parties stipulated as follows: "It is stipulated that all the exhibits in the deposition that was taken in this case, on file in this court, may be received without any proof other than that contained in the deposition, as to the foundation, each party reserving only the right to object to their relevancy, materiality, or competency." It is apparent that many of these exhibits were offered and received in evidence.

As stated in In re Estate of Nielsen, 135 Neb. 110, 280 N. W. 246: "Taxing of costs is within the sound discretion of the trial court, and is not reviewable unless an abuse of

discretion is shown." See, also, Woodard v. Baird, 43 Neb. 310, 61 N. W. 612.

In regard to unused depositions we think the following is the correct rule: "* * * unless it appears that the depositions were not taken in good faith or were actually unnecessary, costs of taking them are properly taxable although they were not used at the trial; and * * * that costs are taxable for depositions not used because the witness attends and testifies in person, if the party taking the depositions acted in good faith * * * where its use is rendered unnecessary or impossible by the act of the opposite party; * * * The questions of good faith and reasonable necessity are for the trial court to determine; and in determining them it will bear in mind that a deposition, at the time of the taking thereof may be apparently necessary in the sense that the party cannot safely proceed to trial without it, although afterward the case may take such a course as to make it unnecessary to use the deposition." 20 C. J. S., Costs, § 194a-1, p. 425. See, also, In re Estate of Nielsen, *supra*.

There is nothing in the record to in any way show that the trial court abused its discretion. In fact, in view of the stipulation and the numerous exhibits used pursuant thereto we think these costs were properly taxed to the plaintiff.

For the reasons stated we find that the judgment entered by the trial court should be and is affirmed.

AFFIRMED.